# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| Certain Underwriters at Lloyd's London subscribing to Policy No. CE0052 | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: ------------------ |
| Jupiter Managing General Agency, Inc. d/b/a Jupiter Auto Insurance; Lyndon Southern Insurance Company; and Insurance Company of the South | ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW, Plaintiff Certain Underwriters at Lloyd's London subscribing to Policy No. CE0052 ("Underwriters"), by and through counsel, and hereby files this Complaint for Declaratory Judgment against Jupiter Managing General Agency, Inc. d/b/a Jupiter Auto Insurance ("Jupiter"); Lyndon Southern Insurance Company ("Lyndon"), and Insurance Company of the South ("ICOTS") (collectively "Defendants") seeking a declaration of non-coverage under an Insurance Agents and Brokers Professional Liability Insurance Policy, as follows:

1.

This insurance coverage declaratory judgment action arises out of allegations that Jupiter is entitled to a defense and indemnity from Underwriters in connection with an underlying arbitration action between Jupiter, Lyndon, and ICOTS brought pursuant to Section 14.1 of the June 22, 2015 Program Administrator Agreement, as amended ("Program Agreement") between Lyndon, ICOTS, and Jupiter pending in Jacksonville, Florida (the "Underlying Arbitration").

Case 3:20-cv-01037   Document 1   Filed 12/02/20   Page 1 of 26 PageID #: 1

2.

Underwriters subscribe to Policy No. CE0052, issued to Jupiter for the period of July 24, 2019 to July 24, 2020 (the "Policy"), a true and correct copy of which is attached hereto as Exhibit "A."

3.

Underwriters are providing Jupiter with a defense to the Underlying Arbitration subject to a complete reservation of rights. A true and correct copy of the Reservation of Rights letter dated June 16, 2020 is attached hereto as Exhibit "B." and as subsequently supplemented on October 21, 2020 is attached hereto as Exhibit "C."

4.

Underwriters respectfully request a judicial determination that they have no obligation to defend or indemnify Jupiter for any Claims asserted in the Underlying Arbitration, pursuant to the terms, limits, conditions, and exclusions of the Policy.

**THE PARTIES**

5.

Underwriters are insurers organized under the laws of England and Wales, with their principal place of business in London, England, United Kingdom.

6.

Jupiter is a corporation organized and existing under the laws of Tennessee with its principal place of business in Nashville, Tennessee. Jupiter may be served through its registered agent, Brian Edward Brown, at 3310 West End Ave. Ste 570, Nashville, Tennessee, 37203. Jupiter is a citizen of Tennessee for the purposes of diversity.

7.

Lyndon is a corporation organized and existing under the laws of Delaware with its principal place of business in Jacksonville, Florida. Lyndon may be served through its registered agent, Corporate Creations Network, Inc. at 3411 Silverside Road Tatnall Building Ste 104, Wilmington, Delaware, 19810. Lyndon is a citizen of Delaware and Florida for the purposes of diversity.

8.

ICOTS is a corporation organized and existing under the laws of Georgia with its principal place of business in Jacksonville, Florida. ICOTS may be served through its registered agent, Corporate Creations Network, Inc. at 2985 Gordy Parkway, 1st Floor, Marietta, Georgia, 30006. ICOTS is a citizen of Georgia and Florida for the purposes of diversity.

**JURISDICTION AND VENUE**

9.

Underwriters file this action under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*

10.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), because there is complete diversity of citizenship between Underwriters and Defendants and because the amount in controversy exceeds $75,000.

11.

This Court has personal jurisdiction over the Defendants.

12.

Venue in this District is proper under 28 U.S.C. § 1391(b)(2) and (3).

13.

An actual case and controversy of a justiciable nature exists between Underwriters and Defendants involving their rights and obligations, if any, under the Policy. Underwriters are uncertain as to Underwriters' obligations under the Policy, if any, and as to Defendants' rights under the Policy. Underwriters are, therefore, entitled to bring this declaratory judgment action in this Court.

## THE UNDERLYING FACTS

14.

In June 2015, Jupiter entered into a Program Administrator Agreement with Lyndon. Therein, Jupiter agreed to serve as the "Administrator" under the Agreement and was responsible for (among other things) soliciting, quoting, reviewing, rejecting, accepting, binding, underwriting applications for, and issuing, amending, endorsing and canceling policies on such forms as are approved by Lyndon as well as billing, collecting, receiving, returning and accounting for premium on policies. In May 2017, ICOTS was added to the Program Agreement through amendment.

15.

On January 28, 2020, Lyndon and ICOTS issued an initial demand letter to Jupiter for certain funds allegedly owed under the Program Agreement. A true and correct copy of the January 28, 2020 demand letter is attached hereto as Exhibit "D." Therein, Lyndon and ICOTS asserted that "[d]espite numerous requests for payment, as of January 15, 2020, Jupiter's outstanding balance due for premiums it reported to [Lyndon and ICOTS] as collected for which it has not remitted payment is $2,272,321.74." Exhibit D., Jan. 28, 2020 Ltr., p. 1 of 2. The letter went on to allege that "Jupiter has further failed to remit additional Program payments, the details

of which have previously been provided . . . Jupiter's balance due as of January 15, 2020, is $2,534,519.15." *Id.*

16.

On May 15, 2020, Lyndon and ICOTS issued a second demand letter to Jupiter. A true and correct copy of the May 15, 2020 demand letter is attached hereto as Exhibit "E." There again, Lyndon and ICOTS asserted that "[d]espite numerous requests for payment, including our demand letter dated January 28, 2020, Jupiter's outstanding balance due for premiums it reported to [Lyndon and ICOTS] as collected for which it has not remitted payment is $2,793,705.59." Exhibit E., May 15, 2020 Ltr, p. 1 of 2.

17.

As was the case with the prior demand letter, Lyndon and ICOTS asserted again that "Jupiter has further failed to remit additional Program payments, the details of which have previously been provided . . . ." *Id.* In the May demand letter, however, Lyndon and ICOTS also asserted that they "recently discovered that Jupiter improperly withdrew individual file Allocated Loss Adjustment Expenses from [Lyndon and ICOTS'] claims account in the amount of $259,186.16 . . . [and] as of the date of this letter, [Lyndon and ICOTS have] terminated Jupiter's ability to make those withdrawals without our prior approval and expect[] to be reimbursed for the amounts improperly withdrawn." *Id.* Further, they asserted that "Jupiter's combined balance due as it relates to all matters as of May 11, 2020, is $3,052,891.75 . . . [and] again demand Jupiter remit payment immediately." *Id.*

18.

Finally, on June 9, 2020, Lyndon and ICOTS issued a demand for arbitration pursuant to the Program Agreement, as amended. A true and correct copy of the demand for arbitration is attached hereto as Exhibit "F." Therein, Lyndon and ICOTS asserted that the:

> parties have arbitrable disputes arising out of the agreement and Jupiter's negligence and breaches of fiduciary duties, including without limitation disputes regarding (a) Jupiter's failure to remit payment of at least $2,212,293.90 in premiums it reported to Lyndon as collected and (b) Jupiter's improper withdrawal of at least $259,186.16 in Allocated Loss Adjustment Expenses from ICOTS's claims account.

Exhibit F., June 9, 2020 Ltr., p. 1 of 1.

19.

Uncertain as to any obligations under the Policy, Underwriters agreed to defend Jupiter in the Underlying Arbitration, pursuant to a complete reservation of rights.

20.

The Underlying Arbitration is still in the early stages, and Lyndon and ICOTS recently filed their Position Statement outlining the basis for their Claim against Jupiter.

21.

Therein, Lyndon and ICOTS assert that they seek a total of at least $3,091,243.44, consisting of $2,757,632.75 in unremitted premium, $259,186.16 in improperly withdrawn ALAE, and $74,424.53 in unpaid legal bills. As was the case with the prior demand letters and the prior demand for arbitration, Lyndon and ICOTS averred that Jupiter negligently failed to remit $2,757,632.75, primarily for premiums reported to Lyndon as collected from policyholders. As was the case with their prior demands, they argue that Jupiter negligently withdrew individual file Allocated Loss Adjustment Expenses ("ALAE") from Lyndon's fiduciary account in the amount

of $259,186.16. For the first time, however, they now seek at least $75,000 in outstanding legal invoices for ALAE that accrued after Lyndon terminated Jupiter's access to the fiduciary account.

22.

After Lyndon and ICOTS terminated Jupiter's access to their fiduciary account they assert Jupiter refused to pay certain ALAE (the $74,424.53) in the form of legal expenses for certain claims Jupiter continues to manage on Lyndon and ICOTS' behalf.

23.

In their Position Statement, Lyndon and ICOTS (citing to Florida law, which they assert governs the Program Agreement) argue that Jupiter is an insurance administrator, defined as an entity that directly or indirectly solicits or effects coverage of, collects charges or premiums from, or adjusts or settles claims on residents on behalf of an insurer. Further, they assert that insurance regulations prohibit a party from acting as an administrator without a written agreement, which specifies the rights, duties, and obligations of the administrator and insurer. Consequently, they assert that Jupiter entered into the Program Agreement and a separate Claims Administration Agreement noting that the Program Agreement empowered Jupiter to solicit, underwrite, and issue non-standard auto insurance policies on Lyndon paper in Arkansas, Oklahoma, and Tennessee and later Texas and Georgia.

24.

Lyndon and ICOTS go on to assert that, under the law of each relevant state, all insurance charges or premiums collected by an administrator on behalf of or for an insurer or insurers shall be held by the administrator in a fiduciary capacity and premium collected by an administrator must be immediately remitted to the person entitled to them or shall be deposited promptly in a fiduciary account established and maintained by an administrator in a financial institution. Further,

they assert that, reinforcing the duties imposed by law, the Program Agreement provided that Jupiter must hold all premium it receives from policyholders as a fiduciary of Jupiter and required Jupiter to deposit and retain the premium in a Premium Trust Account and to pay the premium to Lyndon consistent with the Program Agreement.

25.

Lyndon and ICOTS sum up the allegations in their Position Statement by stating that Jupiter's conduct constitutes negligence. They argue that the relevant state statutes provide that Jupiter held the premium it collected from policyholders on Lyndon's behalf in a fiduciary capacity. They assert that Jupiter breached its statutory duties to Lyndon by (1) failing to remit to Lyndon premium it reported as collect and (2) withdrawing ALAE funds from the fiduciary account without Lyndon's permission. Further, they assert that Jupiter's breach of its statutory duties caused Lyndon losses in excess of $3 million. In addition to negligence, depending on the reason for the discrepancy, they assert Jupiter's conduct may also give rise to claims for breach of fiduciary duty, breach of contract, or fraud.

26.

In addition to these allegations, Lyndon and ICOTS claim that Jupiter has admitted liability for the amounts owed. With respect to the $2,757,632.75 in premiums allegedly owed, they assert that although Jupiter has acknowledged that it failed to exercise reasonable care, Lyndon has still received no money and no explanation for the unremitted premium. Further, they claim that, although Jupiter does not appear to dispute that it failed to remit amounts it reported as collected, it has never offered an explanation for the discrepancy other than to indicate Jupiter's controller at the time "made errors." Finally, with respect to the amounts improperly withdrawn from their fiduciary account ($259,186.16) they claim that, Jupiter admitted that it had negligently withdrawn individual file ALAE from the fiduciary account.

27.

Consequently, Underwriters issued an updated reservation of rights letter to Jupiter on October 21, 2020 and bring this complaint for a declaratory action to determine their obligations under the Policy. Underwriters continue to defend Jupiter and incur defense costs during the pendency of this action.

## THE POLICY

28.

The Policy provides Jupiter with professional liability coverage, subject to the Policy's terms, limits, conditions, and exclusions.

29.

The Policy provides Professional Liability ("PL") Coverage to Jupiter under an Insurance Agents and Brokers Professional Liability Insurance Policy, pursuant to following the insuring agreement, which provides in relevant part:

> **I.     INSURING AGREEMENT**
>
> **A.     Professional Liability**
>
> Subject to the Limit of Liability for Each **Claim** set forth in Item 4.A. and the Aggregate Limit of Liability for all **Claims** set forth in Item 4.B. of the Declarations, the **Insurer** shall pay on behalf of the Insured all Loss and Defense Costs which the **Insured** shall become legally obligated to pay because of a Claim that is both first made against the **Insured** and reported to the **Insurer** in writing during the **Policy Period**, or during an Extended Reporting Period, if applicable, for a **Wrongful Act** committed on or after the **Retroactive Date** by the **Insured**, or by any other natural person for whose **Wrongful Acts** the **Insured** is legally responsible, solely in rendering or failing to render **Professional Services** for a client, provided that prior to the Effective Date of the first Policy issued by the **Insurer** or any **Affiliate of the Insurer** and continuously renewed, no **Insured** had knowledge of any actual or alleged **Wrongful Act**, circumstance or situation which could reasonably be expected to result in a **Claim**.

Exhibit A, DEFENDER IAEO (01/18), p. 6 of 32 (emphasis in original).

30.

The Policy defines "Professional Services" as "services performed for others for a fee or a commission, including via electronic means or method, as a . . . program administrator." *Id*. at p. 9 of 32.

31.

The Policy defines "Loss" as:

> awards, verdicts, judgments, damages and settlements that an Insured is legally obligated to pay as a result of a Claim for a Wrongful Act. Loss also includes:
>
> a.  Pre-judgment and post-judgment interest awarded by a court; and
>
> b.  Punitive or exemplary damages and the multiplied portion of any multiple damage award, to the extent the damages are insurable under applicable law.
>
> c.  However, ***Loss does not include fines, penalties***, taxes, ***damages owed solely based on an express obligation by written or oral agreement; disgorgement of profits by an Insured;*** the costs incurred by an Insured for correction of any Wrongful Act; the repayment or return or any fees, commissions, expenses or costs paid to or charged by an Insured; the cost to comply with any injunctive or other non-monetary or declaratory relief, including specific performance, or any agreement to provide such relief; ***or amounts owed as an obligation under any contract or agreement.***

*Id*. at p. 8 of 32 (emphasis added).

32.

With respect to the defense and settlement of Claims, the Policy states:

> The Insured ***shall not assume or admit liability***, make any payment, consent to any judgment, settle any Claim or incur any Defense Costs ***without the prior written consent of the Insurer***, which consent shall not be unreasonably withheld. The ***Insurer shall not be liable for any*** expense, settlement, ***assumed obligation or admission to which the Insurer has not consented.***

*Id*. at p. 7 of 32 (emphasis added and omitted).

33.

Finally, the Policy sets out the following relevant exclusions to coverage:

## IV.   EXCLUSIONS

The **Insurer** will not be liable to make ***any payment*** for **Loss**, including **Defense Costs** in connection with, arising out of, directly or indirectly related to or in any way involving . . .

**J.** Any actual or alleged dishonest, purposeful, malicious, fraudulent, or criminal act or willful violation of any federal, state or local statute, by or at the direction of or with the knowledge of any **Insured** . . .

**K.** Any actual or alleged gaining of profit, remuneration or monetary advantage to which any **Insureds** are not legally entitled . . .

**N.** Any commingling, misappropriation or conversion of funds . . .

**O.** The collection, payment or return of, or the failure to collect, pay or return any commission, fee, tax or premium . . .

**T.** Actual or alleged unfair competition, restraint of trade, unfair business practices, misuse of confidential or proprietary information or copyright, patent, trade mark or trade secret infringement, or illegal, improper or deceptive advertisement of **Professional Services** . . .

**AA.** Any liability assumed by any Insured under any contract, indemnity agreement, purchase agreement, hold harmless clause or other similar agreement provided however, that this **Exclusion** will not apply to:

a. liability that would have been attached to the **Insured** in the absence of such contract;

b. liability the **Insured** assumed under a Standard Agency, Brokerage, MGA, MGU, Claims Administrator or Lloyds Coverholder Agreement to indemnify an insurer whom the **Insured** represents for **Claims** the insurer incurs solely and exclusively due only to a Wrongful Act or Personal Injury committed by the Insured or by any other person or organization for whose **Wrongful Act** or **Personal Injury** the **Insured** is legally responsible.

*Id*. at p. 10-12 of 32 (emphasis in original).

## COUNT I – DECLARATORY JUDGMENT
## THE DAMAGES CLAIMED BY LYNDON AND ICOTS DO NOT FALL WITHIN THE
## DEFINITION OF COVERED "LOSS" UNDER THE POLICY

34.

Underwriters repeat and reallege each and every one of the foregoing paragraphs as if fully set forth herein.

35.

As stated above, "Loss" under the Policy does not include "damages owed solely based on an express obligation by written or oral agreement; disgorgement of profits by an Insured . . . or amounts owed as an obligation under any contract or agreement." *Id.* at p. 8 of 32 (emphasis omitted).

36.

Lyndon and ICOTS' initial demand letter, dated January 28, 2020, sought $2,272,321.74 for "Jupiter's [alleged] outstanding ***balance due*** for premiums it reported to [Lyndon and ICOTS] as collected for which it has not remitted payment." Exhibit D., Jan. 28, 2020 Ltr., p. 1 of 2. (emphasis added).  The demand letter also sought "additional ***Program payments***, the details of which have previously been provided" and asserted that "Jupiter's ***balance due*** as of January 15, 2020, is $2,534,519.15 . . . ." *Id.* (emphasis added).  All of the damages sought were amounts owed (balances due/payments owed) as an obligation under the Program Agreement (the contract).

37.

Lyndon and ICOTS' second demand letter, dated May 15, 2020, sought $2,793,705.59 for "Jupiter's outstanding ***balance due*** for premiums it reported to [Lyndon and ICOTS] as collected for which it has not remitted payment . . . ." Exhibit E., May 15, 2020 Ltr, p. 1 of 2 (emphasis added).  The May demand letter also sought "additional ***Program payments***, the details of which have previously been provided . . . ." *Id.* (emphasis added).  In addition, this letter asserted that

Lyndon and ICOTS also "recently discovered that Jupiter improperly withdrew individual file Allocated Loss Adjustment Expenses from [Lyndon and ICOTS'] claims account in the amount of $259,186.16" noting that "as of the date of this letter, [Lyndon and ICOTS have] terminated Jupiter's ability to make those withdrawals without [their] prior approval and expect[] to be reimbursed for the amounts improperly withdrawn." *Id.* Finally, the letter concluded that "Jupiter's combined *balance due* as it relates to all matters as of May 11, 2020, is $3,052,891.75." *Id.* (emphasis added). Here again, all of the damages sought were amounts owed (balances due/payments owed) as an obligation under the Program Agreement (the contract).

38.

In Lyndon and ICOTS' demand for arbitration, dated June 9, 2020, and brought pursuant to the Program Agreement between Lyndon, ICOTS, and Jupiter, largely summarized the damages sought by the prior two demand letters where it stated that:

> [t]he parties have arbitrable disputes *arising out of the agreement* and Jupiter's negligence and breaches of fiduciary duties, including without limitation disputes regarding (a) Jupiter's failure to remit payment of at least $2,212,293.90 in premiums it reported to Lyndon as collected and (b) Jupiter's improper withdrawal of at least $259,186.16 in Allocated Loss Adjustment Expenses from ICOTS's claims account. Lyndon and ICOTS therefore demand arbitration *under* Section 14 of *the Program Agreement*.

Exhibit F., June 9, 2020 Ltr., p. 1 of 1 (emphasis added).

39.

Lyndon and ICOTS' Position Statement similarly asserts that Jupiter failed to remit $2,757,632.75, primarily for premiums reported to Lyndon as collected from policyholders, impermissibly withdrew individual file Allocated Loss Adjustment Expenses ("ALAE") from Lyndon's fiduciary account in the amount of $259,186.16 and has further refused to pay at least $75,000 in outstanding legal invoices for ALAE that accrued after Lyndon terminated Jupiter's access to the fiduciary account. With respect to this new category of alleged damages (the

$75,000), Lyndon and ICOTS specifically assert that, pursuant to the agreement, Lyndon had previously paid Jupiter service fees to cover these invoices.

40.

All of these alleged damages are owed solely pursuant to the Program Agreement between Jupiter, Lyndon, and ICOTS and are, thus, "owed solely based on an express obligation by written or oral agreement; disgorgement of profits by an Insured . . . or amounts owed as an obligation under any contract or agreement." Exhibit A, DEFENDER IAEO (01/18), p. 8 of 32 (emphasis omitted).

41.

Therefore, Underwriters are entitled to a declaration that they have no obligation to defend or indemnify Jupiter for any and all Claims asserted in the Underlying Arbitration.

**COUNT II – DECLARATORY JUDGMENT**
**UNDERWRITERS ARE NOT RESPONSIBLE FOR ANY ASSUMED OBLIGATIONS**
**OR ADMISSONS FOR WHICH THEY DID NOT CONSENT**

42.

Underwriters repeat and reallege each and every one of the foregoing paragraphs as if fully set forth herein.

43.

In their Position Statement, Lyndon and ICOTS allege that Jupiter has admitted liability for the amounts owed. With respect to the $2,757,632.75 in premiums allegedly owed, they assert that although Jupiter has acknowledged that it failed to exercise reasonable care, Lyndon has still received no money and no explanation for the unremitted premium. Further, they claim that although Jupiter does not appear to dispute that it failed to remit amounts it reported as collected, it has never offered an explanation for the discrepancy other than to indicate Jupiter's controller at the time "made errors." Finally, with respect to the amounts allegedly improperly withdrawn from

their fiduciary account ($259,186.16) they claim that, Jupiter admitted that it had negligently withdrawn individual file ALAE from the fiduciary account.

44.

As of the date Lyndon and ICOTS issued their Position statement, and to this date, Underwriters never gave their consent to admit any liability for the aforementioned damages.

45.

As stated above, under the Policy, "Insurer[s] shall **not be liable for any** expense, settlement, **assumed obligation or admission to which the Insurer has not consented**." *Id*. at p. 7 of 32.

46.

Therefore, Underwriters are entitled to a declaration that they have no obligation to defend or indemnify Jupiter for any and all Claims asserted in the Underlying Arbitration for which Jupiter has impermissibly admitted liability.

**COUNT III – DECLARATORY JUDGMENT**
**THE POLICY'S EXCLUSION FOR PROFIT, REMUNERATION, OR MONETARY**
**ADVANTAGE TO WHICH INSUREDS ARE NOT LEGALLY ENTITLED BARS**
**COVERAGE**

47.

Underwriters repeat and reallege each and every one of the foregoing paragraphs as if fully set forth herein.

48.

The Policy explicitly states that Underwriters "will not be liable to make any payment for Loss, including Defense Costs in connection with, arising out of, directly or indirectly related to or in any way involving . . . [a]ny actual or alleged gaining of profit, remuneration or monetary advantage to which any Insureds are not legally entitled . . . ." *Id*. at p. 10-11 of 32.

49.

All of the Claims asserted in the aforementioned demand letters and demand for arbitration arise out of the alleged gaining of profit, remuneration or monetary advantage to which Jupiter is not legally entitled.

50.

Specifically, the January 28, 2020 letter, sought $2,272,321.74 for "Jupiter's ***outstanding balance due*** for premiums it reported to [Lyndon and ICOTS] as collected ***for which it has not remitted payment***." Exhibit D., Jan. 28, 2020 Ltr., p. 1 of 2 (emphasis added). The January 28, 2020 demand letter also sought "additional ***Program payments***, the details of which have previously been provided" and asserted that "***Jupiter's balance due*** as of January 15, 2020, is $2,534,519.15 . . . ." *Id.* (emphasis added).

51.

Lyndon and ICOTS' second demand letter, dated May 15, 2020, sought $2,793,705.59 for "Jupiter's ***outstanding balance due*** for premiums it reported to [Lyndon and ICOTS] as collected ***for which it has not remitted payment*** . . . . Exhibit E., May 15, 2020 Ltr, p. 1 of 2. The demand letter also sought "additional Program payments, the details of which have previously been provided . . . ." *Id.*(emphasis added). In addition, this letter asserted that Lyndon and ICOTS also "recently discovered that Jupiter ***improperly withdrew individual file Allocated Loss Adjustment Expenses*** from [Lyndon and ICOTS'] claims account in the amount of $259,186.16" noting that "as of the date of this letter, [Lyndon and ICOTS have] terminated Jupiter's ability to make those withdrawals without [their] prior approval and ***expect[] to be reimbursed for the amounts improperly withdrawn***." *Id.* (emphasis added). The letter concluded that "Jupiter's ***combined balance due*** as it relates to all matters as of May 11, 2020, is $3,052,891.75." *Id.*

52.

Lyndon and ICOTS' demand for arbitration, dated June 9, 2020, largely summarized the damages sought by the prior two demand letters where it described the damages sought at arbitration:

> [t]he parties have arbitrable disputes arising out of the agreement and Jupiter's negligence and breaches of fiduciary duties, including without limitation disputes regarding (a) Jupiter's *failure to remit payment of at least $2,212,293.90* in premiums it reported to Lyndon as collected and (b) Jupiter's *improper withdrawal of at least $259,186.16* in Allocated Loss Adjustment Expenses from ICOTS's claims account. Lyndon and ICOTS therefore demand arbitration under Section 14 of the Program Agreement.

Exhibit F., June 9, 2020 Ltr., p. 1 of 1. (emphasis added).

53.

Finally, as was the case with the prior demand letters and demand for arbitration, Lyndon and ICOTS' Position Statement seeks a total of at least $3,091,243.44, consisting of $2,757,632.75 in unremitted premium, $259,186.16 in improperly withdrawn ALAE, and $74,424.53 in unpaid legal bills. Of note, with respect to the newest source of damages (the $74,424.53), Lyndon and ICOTS assert that Lyndon had previously paid Jupiter service fees to cover these invoices.

54.

Each of the demand letters and the Position Statement above seek funds that Lyndon and ICOTS claim Jupiter either (1) collected and has failed to remit pursuant to the Program Agreement; (2) are funds that Jupiter allegedly "improperly withdrew" from Lyndon and ICOTS' claims account for which they demand to be reimbursed; or are (3) amounts that Jupiter allegedly received service fees for but never paid. In all cases, these Claims are for "profit, remuneration or monetary advantage" to which Jupiter is allegedly not legally entitled.

55.

Therefore, the Claims related to the Underlying Arbitration are specifically and expressly excluded from coverage under the Policy's Exclusion for any actual or alleged gaining of profit, remuneration or monetary advantage to which any Insureds are not legally entitled.

56.

Accordingly, Underwriters are entitled to a declaration that they have no obligation to defend or indemnify Jupiter for any and all Claims asserted in the Underlying Arbitration.

<strong>COUNT IV – DECLARATORY JUDGMENT<br>THE POLICY'S EXCLUSION FOR COMMINGLING, MISAPPROPRIATION, OR<br>CONVERSION OF FUNDS BARS COVERAGE</strong>

57.

Underwriters repeat and reallege each and every one of the foregoing paragraphs as if fully set forth herein.

58.

The Policy explicitly states that Underwriters "will not be liable to make any payment for Loss, including Defense Costs in connection with, arising out of, directly or indirectly related to or in any way involving . . . [a]ny commingling, misappropriation or conversion of funds . . . ." Exhibit A, DEFENDER IAEO (01/18), p. 10-11 of 32.

59.

All of the Claims asserted in the aforementioned demand letters and demand for arbitration arise out of the alleged commingling, misappropriation or conversion of funds by Jupiter.

60.

Specifically, as stated above, both demand letters, the demand for arbitration, and the Position Statement cumulatively seek funds that Lyndon and ICOTS claim Jupiter either (1)

collected and has failed to remit to them pursuant to their Program Agreement; (2) are funds that Jupiter allegedly "improperly withdrew" from Lyndon and ICOTS' claims account for which they demand to be reimbursed; or are (3) amounts that Jupiter allegedly received service fees for but never paid. In all cases, these claims assert that Jupiter has, in effect, commingled, misappropriated, or converted Lyndon/ICOTS' funds.

61.

Therefore, the Claims asserted in the Underlying Arbitration are specifically and expressly excluded from coverage under the Policy's Exclusion for commingling, misappropriation or conversion of funds.

62.

Accordingly, Underwriters request that the Court declare that Underwriters have no duty to defend or indemnify Jupiter in the Underlying Arbitration.

**COUNT V – DECLARATORY JUDGMENT**
**THE POLICY'S EXCLUSION FOR LOSS IN CONNECTION WITH, ARISING OUT OF, DIRECTLY OR INDIRECTLY RELATED TO OR IN ANY WAY INVOVLING THE COLLECTION, PAYMENT OR RETURN OF, OR FAILURE TO COLLECT, PAY OR RETURN PREMIUM BARS COVERAGE**

63.

Underwriters repeat and reallege each and every one of the foregoing paragraphs as if fully set forth herein.

64.

The Policy explicitly states that Underwriters "will not be liable to make any payment for Loss, including Defense Costs in connection with, arising out of, directly or indirectly related to or in any way involving . . . [t]he collection, payment or return of, or the failure to collect, pay or return any commission, fee, tax or premium." *Id.*

65.

Both of the aforementioned demand letters, the demand for arbitration, and the Position Statement specifically claim damages for premiums that Jupiter allegedly reported to Lyndon and ICOTS as collected but have yet to be paid to Lyndon and ICOTS.

66.

Specifically, the January 28, 2020 demand letter sought $2,272,321.74 for "Jupiter's outstanding balance **due for premiums** it reported to [Lyndon and ICOTS] **as collected** for which it has **not remitted payment** . . . ." Exhibit D., Jan. 28, 2020 Ltr., p. 1 of 2 (emphasis added).

67.

The May 15, 2020 demand letter sought $2,793,705.59 for "Jupiter's outstanding balance due **for premiums** it reported to the [Lyndon and ICOTS] **as collected** for which it has **not remitted payment** . . . ." Exhibit E., May 15, 2020 Ltr, p. 1 of 2 (emphasis added).

68.

The June 9, 2020 demand for arbitration seeks "at least $2,212,293.90" for "Jupiter's failure to remit **payment of** . . . **premiums it reported to Lyndon as collected** . . . ." Exhibit F., June 9, 2020 Ltr., p. 1 of 1 (emphasis added). In each, the Claims "arise[e] out of" or are "directly or indirectly related to" or, at the very least, "involv[e]" the collection or failure to collect or pay premiums allegedly owed to Lyndon and ICOTS. Exhibit A, DEFENDER IAEO (01/18), p. 10 of 32.

69.

Finally, the August 25, 2020 Position Statement seeks $2,757,632.75 in unremitted premium.

70.

The Policy bars coverage to the extent that the damages sought are "in connection with, arising out of, directly or indirectly related to or in any way involving . . . ***collection, payment or return of, or the failure to collect, pay or return*** any commission, fee, tax ***or premium*****." *Id.* at p. 10-11 of 32 (emphasis added).

71.

Therefore, Underwriters are entitled to a declaration that there is no coverage under the Policy for the Claims asserted in the Underlying Arbitration against Jupiter to the extent the damages sought arise out of, directly or indirectly relate to, or in any way involve the collection, payment or return of, or the failure to collect, pay or return any commission, fee, tax or premium.

**COUNT VI – DECLARATORY JUDGMENT**
**THE POLICY'S EXCLUSION FOR UNFAIR BUSINESS PRACTICES BARS**
**COVERAGE**

72.

Underwriters repeat and reallege each and every one of the foregoing paragraphs as if fully set forth herein.

73.

In their Position Statement, Lyndon and ICOTS appear to assert that Jupiter is subject to various state laws and regulations that impose certain duties on Jupiter with respect to the collection and payment of collected premium.

74.

Specifically, Lyndon and ICOTS cite Florida, Arkansas, Oklahoma, Tennessee, Georgia, and Texas law based on the fact that Jupiter allegedly served as an insurance administrator for

Lyndon in these states and based on the fact that Lyndon and ICOTS contend Florida law governs the Program Agreement.

75.

As stated above, the Policy states that "Insurer[s] will not be liable to make any payment for Loss, including Defense Costs in connection with, arising out of, directly or indirectly related to or in any way involving. . . [a]ctual or alleged unfair competition, restraint of trade, unfair business practices. . . ." *Id.*

76.

Thus, to the extent that any of the alleged actions by Jupiter (on which Lyndon/ICOTS' Claims in the Underlying Arbitration are based) constitute actual or alleged unfair competition, restraint of trade, or unfair business practices under any of these respective states' laws or regulations, Underwriters are entitled to a declaration that there is no coverage under the Policy for the Claims asserted in the Underlying Arbitration against Jupiter.

## COUNT VII– DECLARATORY JUDGMENT
## THE POLICY'S EXCLUSION FOR LIABILITY ASSUMED BY ANY INSURED UNDER ANY CONTRACT BARS COVERAGE

77.

Underwriters repeat and reallege each and every one of the foregoing paragraphs as if fully set forth herein.

78.

The Policy explicitly states that Underwriters:

> will not be liable to make any payment for **Loss**, including **Defense Costs** in connection with, arising out of, directly or indirectly related to or in any way involving. . .

> **AA.** [a]ny liability *assumed by any Insured under any contract,* indemnity agreement, purchase agreement, hold harmless clause or

other similar agreement provided however, that this **Exclusion** will not apply to:

a.    liability that would have been attached to the **Insured** in the absence of such contract;

b.    liability the **Insured** assumed under a Standard Agency, Brokerage, MGA, MGU, Claims Administrator or Lloyds Coverholder Agreement to indemnify an insurer whom the **Insured** represents for **Claims** the insurer incurs solely and exclusively due only to a Wrongful Act or Personal Injury committed by the Insured or by any other person or organization for whose **Wrongful Act** or **Personal Injury** the **Insured** is legally responsible.

*Id*. at p. 10-12 of 32 (italics added).

79.

The allegations contained in the aforementioned demand letters, demand for arbitration, and Position Statement are all are premised on breaches of the liability assumed under the Program Agreement between Lyndon, ICOTS, and Jupiter.

80.

Therefore, Underwriters are entitled to a declaration that there is no coverage under the Policy for the Claims asserted in the Underlying Arbitration against Jupiter, as all of these Claims are for "liability assumed by [the] Insured under [a] contract . . . ." *Id*. at p. 12 of 32 (italics added.).

**COUNT VIII – DECLARATORY JUDGMENT**
**THE POLICY'S EXCLUSION FOR DISHONEST, PURPOSEFUL, MALICIOUS, FRAUDULENT, OR CRIMINAL ACTS OR WILLFUL VIOLATIONS OF ANY FEDERAL, STATE OR LOCAL STATUTES BARS COVERAGE IF SUCH CONDUCT IS ESTABLISHED IN A FINAL AND NON-APPEALABLE JUDGMENT OR ADJUDICIATION**

81.

Underwriters repeat and reallege each and every one of the foregoing paragraphs as if fully set forth herein.

82.

The Policy states that "[t]he Insurer will not be liable to make any payment for Loss, including Defense Costs in connection with, arising out of, directly or indirectly related to or in any way involving . . . actual or alleged dishonest, purposeful, malicious, fraudulent, or criminal act or willful violation of any federal, state or local statute, by or at the direction of or with the knowledge of any Insured." *Id*. at p. 10-11 of 32.  The Policy also states that "this exclusion does not apply unless and until such conduct is established in a final and non-appealable judgment or adjudication to be fraudulent, dishonest or criminal." *Id*.

83.

In their position statement, Lyndon and ICOTS assert that, in addition to negligence, depending on the reason for the discrepancy, Jupiter's conduct may also give rise to Claims for breach of fiduciary duty, breach of contract, or fraud.

84.

As such, Underwriters are entitled to a declaration that there is no coverage under the Policy for the Claims asserted in the Underlying Arbitration against Jupiter to the extent they involve "actual or alleged dishonest, purposeful, malicious, fraudulent, or criminal act or willful violation of any federal, state or local statute, by or at the direction of or with the knowledge of any Insured . . . [if] such conduct is established in a final and non-appealable judgment or adjudication to be fraudulent, dishonest or criminal." *Id*. at p. 11 of 32.

## COUNT IX – DECLARATORY JUDGMENT
## RECOVERY OF DEFENSE COSTS FOR NON-COVERED CLAIMS

85.

Underwriters repeat and reallege each and every one of the foregoing paragraphs as if fully set forth herein.

86.

As stated above, Underwriters are providing Jupiter with a defense to the Underlying Arbitration subject to a complete reservation of rights.

87.

In their reservation of rights, Underwriters explicitly reserved their right to "withdraw the defense, file a declaratory judgment action, and seek repayment of any non-covered defense costs and attorneys' fees." Exhibit B., Reservation of Rights Ltr., p. 2 of 6. Underwriters reiterated this reservation in their supplemental reservation of rights letter. *See* Exhibit C., Supplemental Reservation of Rights Ltr., p. 1 of 8.

88.

Thus, to the extent that this Court finds that the aforementioned allegations/damages are not covered under the Policy, Underwriters seek repayment of any non-covered defenses costs and attorneys' fees expended in defending Jupiter in the Underlying Arbitration.

## PRAYER FOR RELIEF

**WHEREFORE**, Underwriters pray for judgment:

(1)     Declaring that Underwriters have no duty to defend or indemnify Jupiter in the Underlying Arbitration or any other subsequent, related litigation;

(2)     Declaring that Underwriters have no duty to defend or indemnify any individual or entity that otherwise may be entitled to coverage under the Policy for any Claims existing in the Underlying Arbitration;

(3)     Declaring that Jupiter must repay Underwriters for any and all defense expenses paid in defense of Jupiter in the Underlying Arbitration;

(4)     Entering judgment in favor of Underwriters and against Defendants on any and all

grounds set forth in this Complaint; and

(5)     Awarding Underwriters such other and further relief as the Court may deem just

and proper.

This <u>2nd</u> day of <u>December</u> 2020.


**FIELDS HOWELL LLP**                    <u>**/s/ Gregory L. Mast**              </u>
Republic Centre, Suite 600              Gregory L. Mast
633 Chestnut Street                     BPR No.:  030681
Chattanooga, Tennessee 37450
423.424.5263 (Telephone)                *Attorney for Plaintiff Certain Underwriters*
404.214.1251 (Facsimile)                *at Lloyd's London subscribing to Policy*
gmast@fieldshowell.com                  *No. CE0052*