IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO. CE0052,<br><br>Plaintiff,<br><br>v.<br><br>JUPITER MANAGING GENERAL AGENCY, INC., d/b/a JUPITER AUTO INSURANCE; LYNDON SOUTHERN INSURANCE COMPANY; and INSURANCE COMPANY OF THE SOUTH<br><br>Defendants. | Case No. 3:20-cv-01037<br><br>JUDGE CAMPBELL<br>MAGISTRATE JUDGE HOLMES |

## MEMORANDUM

Pending before the Court is a Motion for Judgment on the Pleadings filed by Plaintiff Certain Underwriters at Lloyd's London subscribing to Policy No. CE0052 ("Lloyd's"). (Doc. No. 61). Defendants Lyndon Southern Insurance Company and Insurance Company of the South (collectively, "Lyndon"), and Jupiter Managing General Agency Inc. ("Jupiter") each filed a response in opposition.[1] (Doc. Nos. 68, 69). Lloyd's filed a reply. (Doc. No. 75).

In addition, Plaintiff filed a request for oral argument. (Doc. No. 62). The Court does not find oral argument necessary for resolution of the motion. Accordingly, that request is denied.

---

[1] Jupiter's Response "acknowledges the thoughtful and deliberate articulation of the issues and the applicable law in [Lyndon's] response" and "in the interests of judicial economy" adopts Lyndon's arguments in opposition to the Motion for Judgment on the Pleadings. (Doc. No. 69 at 7). Accordingly, the Court relies upon the arguments presented by Lyndon (Doc. No. 68) as representing the position of both Lyndon and Jupiter with regard to the pending motion.

For the reasons stated herein, Plaintiff's Motion for Judgment on the Pleadings will be **DENIED**.

## I. BACKGROUND

Jupiter and Lyndon entered into contractual agreements whereby Jupiter served as the program administrator and claims manager for Lyndon. When a dispute arose as to the amounts due under the Program Agreement, Lyndon sent Jupiter a written Demand for Arbitration. (Doc. No. 1-6). As articulated in Lyndon's Position Statement in the arbitration, Lyndon claimed: (1) "Jupiter negligently failed to remit $2,757,632.75, primarily for premiums reported to Lyndon as collected from policyholders"; (2) "Jupiter negligently withdrew individual file Allocated Loss Adjustment Expenses ("ALAE") from Lyndon's fiduciary account in the amount of $259,186.16"; and (3) Jupiter "refused to pay at least $75,000 in outstanding legal invoices for ALAE that accrued after Lyndon terminated Jupiter's access to the fiduciary account." (*See* Doc. No. 32-1).

Lloyd's issued an Insurance Agents and Brokers Professional Liability Insurance Policy (the "Policy") to Jupiter for the period of July 24, 2019 to July 24, 2020. (*See* Compl., Doc. No. 1 ¶ 2; Doc. No. 1-1). Lloyd's seeks a declaration that the damages claimed by Lyndon in the arbitration are not covered by the Policy and Lloyd's owes no duty to defend or indemnify Jupiter with respect to the arbitration.[2] (Doc. No. 60 at 1).

---

[2] Lloyd's defended Jupiter in the arbitration under a reservation of rights. (*See* Reservation of Rights Letters, Doc. Nos. 1-2, 1-3). The arbitration has concluded. (*See* Doc. No. 80). This Court confirmed the Final Award of the arbitrators, which awarded Lyndon $1,745,477.00. *Jupiter Managing General Agency, Inc. v. Lyndon Southern Ins. Co.*, Case No. 3:21-cv-652, Doc. Nos. 51, 52 (M.D. Tenn. March 22, 2022).

## II. STANDARD OF REVIEW

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard for evaluating a motion for judgment on the pleadings is the same as that applicable to a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *Monroe Retail, Inc. v. RBS Citizens, N.A.*, 589 F.3d 274, 279 (6th Cir. 2009). The Court may grant a plaintiff's motion for judgment on the pleadings where "all well-pleaded material allegations of the pleadings of the opposing party [are] taken as true, and … the moving party is nevertheless clearly entitled to judgment." *Id*. (citing *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). The Court may consider "documents attached to and referenced in the pleadings on a motion for judgment on the pleadings without converting the motion into a motion for summary judgment." *Founders Ins. Co. v. Bentley Entertainment, LLC*, No. 3:12-cv-01315, 2013 WL 3776311, at *8 (M.D. Tenn. 2013) (citing *Barany-Snyder v. Werner*, 539 F.3d 327, 333 (6th Cir. 2008)).

## III. ANALYSIS

### A. Applicable Law

In a diversity action, the substantive law of the forum state controls under the forum's choice of law principles. *See In re Air Crash Disaster*, 86 F.3d 498, 540-41 (6th Cir. 1996) (citing *Klaxton Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). "In Tennessee, absent a valid choice of law provision, the rights and obligations under an insurance policy are governed by the law of the state where the insurance policy was 'made and delivered.'" *Charles Hampton's A-1 Signs, Inc. v. Am. States Ins. Co.*, 225 S.W.3d 482, 485 n.1 (Tenn. Ct. App. 2006). Here the Policy does not contain a choice of law provision specifying the law of a particular state. (*See* Policy,

3

Doc. No. 1-1 (specifying choice of law as "U.S.A.")). Because the Policy was issued and delivered to Jupiter in Nashville, Tennessee (*see id.*), the Court will apply Tennessee substantive law to the interpretation and effect of the Policy.

Under Tennessee law, "an insurance policy is a contract, and as such, [the court's] analysis must be grounded in principles of contract law." *Christenberry v. Tipton*, 160 S.W.3d 487, 492 (Tenn. 2005). Thus, the terms of an insurance contract "should be given their plain and ordinary meaning." *Garrison v. Bickford*, 377 S.W.3d 659, 663 (Tenn. 2012). Where the language of the policy is clear and unambiguous, the court must give effect to that meaning. *Id*. Courts must construe insurance policies "as a whole in a reasonable and logical manner." *Travelers Indem. Co. of Am. v. Moore & Assocs., Inc.*, 216 S.W.3d 302, 306 (Tenn. 2007); *see also*, *Shempert v. Cox*, 513 S.W.3d 469, 473 (Tenn. Ct. App. 2016) ("The policy should be construed 'as a whole in a reasonable and logical manner' and the language in dispute should be examined in the context of the entire agreement.").

"Language in an insurance policy is ambiguous if it is susceptible of more than one reasonable interpretation." *Artist Bldg. Parters v. Auto-Owners Mut. Ins. Co.*, 435 S.W.3d 202, 216 (Tenn. Ct. App. 2013) (citing *Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn. 1993)). "Ambiguity in a contract is doubt or uncertainty arising from the possibility of the same language being fairly understood in more ways than one." *Id*. (quoting *Mid-Century Ins. Co. v. Williams*, 174 S.W.3d 230, 240 (Tenn. Ct. App. 2005)). "When a provision that purports to limit insurance is ambiguous, it must be construed against the insurance company and in favor of the insured." *Id*. (quoting *Gates v. State Auto Mut. Ins. Co.*, 196 S.W.3d 761, 764 (Tenn. Ct. App. 2005)).

Under Tennessee law, "whether a duty to defend arises depends solely on the allegations contained in the underlying complaint" and where the underlying dispute is pending in arbitration, "the central issue [ ] is whether [the claimant's] demand for arbitration alleges damages that are within the risk covered by the policy …" *Travelers Indem. Co. of Am. v. Moore & Assocs., Inc.*, 216 S.W.3d 302, 305 (Tenn. 2007). "If any allegations in the complaint are covered by an insurance policy, the insurance company has a duty to defend." *York v. Vulcan Materials Co.*, 63 S.W.3d 384, 387-88 (Tenn. Ct. App. 2001). "Any doubt as to whether the claimant has stated a cause of action within the coverage of the policy is resolved in favor of the insured." *Forrest Const., Inc. v. Cincinnati Ins. Co.*, 728 F. Supp. 2d 955, 959-60 (M.D. Tenn. 2010) (collecting cases).

**B. The Policy Provisions**

Lloyd's contends the damages sought by Lyndon are not covered under the Policy. The Parties have identified the following Policy provisions as relevant to Lloyd's duty to defend. The Policy contains the following definitions of "wrongful act" and "loss":

> **Wrongful Act** means a negligent act, error, or omission or Personal Injury committed by an Insured or any natural person for whose Wrongful Acts the Insured is legally responsible solely in the rendering or failing to render Professional Services for a client.

(Doc. No. 1-1 at PageID# 37).

> **Loss** means awards, verdicts, judgments, damages and settlements that an **Insured** is legally obligated to pay as a result of a **Claim** for a **Wrongful Act**. Loss also includes:
>
> a. Prejudgment and post-judgment interest awarded by a court; and
>
> b. Punitive or exemplary damages and the multiplied portion of any multiple damages award, to the extent the damages are insurable under applicable law.

    c. However, **Loss** does not include fines, penalties, taxes, damages owed solely based on an express obligation by written or oral agreement; disgorgement of profits by an **Insured**; the costs incurred by an **Insured** for correction of any **Wrongful Act**; the repayment or return or any fees, commissions, expenses or costs paid to or charged by an **Insured**; the cost to comply with an injunctive or other non-monetary or declaratory relief, including specific performance, or any agreement to provide such relief; or amounts owed as an obligation under any contract or agreement.

(*Id*. at PageID# 35).

The Policy includes the following coverage exclusions:

> The **Insurer** will not be liable to make any payment for **Loss**, including **Defense Costs** in connection with, arising out of, directly or indirectly related to or in any way involving:
>
>     K. Any actual or alleged gaining of profit, remuneration or monetary advantage to which any **Insureds** are not legally entitled;
>
>     …
>
>     N. Any comingling, misappropriation or conversion of funds;
>
>     O. The collection, payment or return of, or the failure to collect, pay or return any commission fee, tax or premium; (Policy, Doc. No. 1-1 at IV.O.)

(*Id*. at PageID# 38).

### C. The Underlying Claims

Before issuing a demand for arbitration, Lyndon sent Jupiter two letters demanding payment of an "outstanding balance due for premiums [Jupiter] reported to the Company as collected for which it has not remitted payment" and failure to remit "additional Program payments." (Jan. 28, 2020 Demand Letter, Doc. No. 1-4). The January letter stated:

> In addition to constituting a breach of the Program Agreements between the Parties, we have reason to believe Jupiter's failure to remit is the result of a breach of the professional duties, standard of care, and fiduciary duties owed

6

to the Company. We believe Jupiter has, among other things, negligently:

 a. failed to collect premiums on behalf of Claimants;
 b. failed to accurately monitor and advise Claimants of the amount of premiums written and collected under the Programs;
 c. failed to exercise reasonable care in handling funds in trust; and
 d. otherwise failing to meet the standard of care required of insurance producers when administering the program.

(*Id*.). On May 15, 2020, Lyndon sent a second demand letter. (Doc. No. 1-5). This letter reiterated the demand in the first letter with a slightly higher dollar amount owed for failure to remit collected premiums. (*Id*.). Lyndon added that it had recently discovered that "Jupiter improperly withdrew individual file Allocated Loss Adjustment Expenses from the Company's claims account." (*Id*.).

On June 9, 2020, Lyndon sent Jupiter a Demand for Arbitration. (Doc. No. 1-6). The Demand stated:

> The parties have arbitrable disputes arising out of the agreement and Jupiter's negligence and breaches of fiduciary duties, including without limitation disputes regarding (a) Jupiter's failure to remit payment of at least $2,202,293.00 in premiums it reported to Lyndon as collected and (b) Jupiter's improper withdrawal of at least $259,186.16 in Allocated Loss Adjustment Expenses from [Lyndon's] claims account. Lyndon [ ] therefore demand[s] arbitration under Section 14 of the Program Agreement.

(*Id*.).

On August 25, 2020, Lyndon submitted its Claimants' Position Statement to the arbitration panel summarizing its claims as follows:

> This dispute involves the negligent failure of Jupiter Managing General Agency, Inc. ("Jupiter") to pay more than $3 million owed to Lyndon Southern Insurance Company and Insurance Company of the South (collectively, "Lyndon").
>
> First, Jupiter negligently failed to remit $2,757,632.75, primarily for premiums reported to Lyndon as collected from policyholders. Jupiter's failure to exercise reasonable care in managing the premium it collected on

> Lyndon's behalf constitutes a breach of its statutory duty to hold collected premium in a fiduciary capacity. Although Jupiter has not provided an explanation for the discrepancy, Lyndon believes the error was likely the result of Jupiter's negligent failure to collect, monitor, or distribute the policyholder premium it held in trust for Lyndon.
>
> Second, Jupiter negligently withdrew individual file Allocated Loss Adjustment Expenses ("ALAE") from Lyndon's fiduciary account in the amount of $259,186.16. Jupiter's withdrawal likewise constitutes a breach of its statutory duty to hold collected premium in a fiduciary capacity. Jupiter has further refused to pay at least $75,000 in outstanding legal invoices for ALAE that accrued after Lyndon terminated Jupiter's access to the fiduciary account. Pursuant to the agreement, Lyndon had previously paid Jupiter service fees to cover these invoices. This outstanding amount will continue to grow as the cases continue.

(Doc. No. 32-1).

**D. Duty to Defend**

Lloyd's argues there is no coverage under the Policy because the Policy definition of loss "does not include amounts owed as an obligation under any contract or agreement" and because three separate policy exclusions apply to exclude coverage in whole or in part. Lloyd's contends that because there is not policy coverage for the claims alleged, it did not have a duty to defend Jupiter in the underlying arbitration and does not have a duty to indemnify Jupiter for the award of damages.

1. <u>Amounts owed as an obligation under any contract or agreement</u>

Lloyd's argues that the damages sought in the underlying arbitration are not included in the Policy's definition of covered loss because the damages owed are pursuant to the Program Agreement between Jupiter and Lyndon. Lloyd's cites the Policy definition of "Loss" which provides that "Loss" does not include "damages owed solely based on an express obligation by written or oral agreement; disgorgement of profits by an Insured … or amounts owed as an

obligation under any contract or agreement."[3] (Doc. No. 60 at 13 (citing Doc. No. 1-1)).

Here, the damages Lyndon seeks to recover are amounts owed pursuant to a contract between Lyndon and Jupiter or are profits Lyndon seeks to disgorge. Lyndon argues, however, that the damages sought are not "solely" based on contractual obligation. Indeed, Lyndon alleges that Jupiter has a separate statutory duty to manage appropriately funds held in trust, and, in addition to claims for breach of contract, Lyndon asserts claims for negligence and breach of fiduciary duty. Jupiter argues that, at a minimum, Lyndon's third claim – that "Jupiter has further refused to pay at least $75,000 in outstanding legal invoices" which it was contractually obligated to pay – seeks an amount owed solely as an obligation under any contract or agreement.

It is essential to look at each claim separately because an exclusion or policy limitation might be applicable to one claim and not another. Here, Lyndon contends that the limitation in the definition of "loss" does not apply to its claims arising out of failure to remit collected premiums and improperly withdrawing funds from the fiduciary account because the contract was not the sole basis of Jupiter's duty with regard to these funds. The Court agrees that the Policy definition of "loss" does not indicate that there is no possibility of coverage for certain claims based on these allegations. However, Lyndon's claim for failure to pay legal invoices Jupiter was allegedly contractually obligated to pay – is an amount owed solely as an obligation under any contract or agreement. Accordingly, this part of the claim is not included within the definition of "loss" covered by the policy and, to the extent Lloyd's has a duty to defend, it does not arise from

---

[3] The parties have not discussed whether "solely," which unquestionably modifies the clause "based on an express obligation by written or oral agreement," also modifies the last clause – "amounts owed as an obligation under any contract or agreement." Accordingly, the Court does not undertake such analysis.

9

the allegations with regard to this claim.

   2. <u>Collection, payment or return of, or the failure to collect, pay or return any commission fee, tax or premium</u>

Lloyd's argues the exclusion of coverage for "loss" "in connection with, arising out of, directly or indirectly related to or in any way involving" "[t]he collection, payment or return of, or the failure to collect, pay or return any commission fee, tax or premium" precludes coverage for all of Lyndon's claims. Lloyd's argues that Lyndon's claim for failure to remit payment for collected premiums plainly falls within this exclusion and that the remaining claims are also excluded because they also involve collected premiums – *i.e.*, Jupiter's wrongful use of funds (*i.e.*, collected premiums) from the fiduciary account, and failure to pay legal fees which it undertook a contractual obligation to pay in exchange for a service fee based on the percent of collected premiums. (Doc. No. 60 at 7-8 (citing Position Statement, Doc. No. 32-1 at 8)).

Lyndon argues that the policy exclusion for claims concerning "the collection, payment, or return of, or the failure to collect, pay or return … any premium," does not preclude coverage for all claims involving premiums. Moreover, Lyndon argues the allegations against Jupiter, though related to premiums, do not fall within the exclusion because Jupiter is not alleged to have failed to collect or return premiums (the language of the exclusion), but to have failed to remit collected premiums to Lyndon. Somewhat related, Lyndon also argues that the exclusion applies to loss related to Jupiter's conduct with insureds, not with Lyndon.

The Court agrees that this exclusion does not plainly cover all of the alleged conduct. The "The term 'arising out of' in liability policies has generally been held to be a broad, comprehensive term meaning 'origination from,' 'having its origin in,' 'growing out,' or 'flowing from.'"

10

*Travelers Ins. Co. v. Aetna Cas. & Sur. Co.*, 491 S.W.2d 363, 365 (Tenn. 1973)). Though the allegations against Jupiter involve collected premiums, a precise reading of the policy language excluding claims involving "collection, payment, or return of premiums" suggests that the claims for failure to "remit" collected premiums do not fall within the exclusion. Perhaps this reading is too precise. Perhaps not. At this juncture the Court can only say that the contract language does not definitively foreclose the possibility of coverage.

With regard to the other two claims, the claim arising out of the unauthorized withdrawal of ALAE from Lyndon's fiduciary account is entirely unrelated to the collection of premiums, except that the funds themselves originated from policy premiums. As stated above, the Court is unconvinced that the policy exclusion applies to any and all claims that involve "collected premiums" as opposed to "collection of premiums." Finally, the claim for failure to pay certain legal fees that Jupiter was contractually obligated to pay is even more tangentially related to the collection or payment of premiums. However, as this claim does not fall within the Policy definition of "loss," the applicability of the exclusion with regard to the third claim is irrelevant.

In summary, the Court finds the plain language of the exclusion for "collection, payment or return of, or the failure to collect, pay or return any commission fee, tax or premium" does not clearly preclude coverage for the asserted claims.

3. Comingling, misappropriation or conversion of funds

Lloyd's next argues that all of the damages sought are excluded by the Policy's exclusions for loss "in connection with, arising out of, directly or indirectly related to or in any way involving" "comingling, misappropriation or conversion of funds." (Doc. No. 60 at 9). Lloyd's argues that damages arising out of Lyndon's allegation that Jupiter failed to remit collected premiums,

11

improperly withdrew funds from Lyndon's fiduciary account, and "forced Lyndon [ ] to pay certain amounts Jupiter was contractually obligated to pay" plainly fall within this exclusion. (Doc. No. 60 at 11).

Lyndon argues the exclusion does not apply because both misappropriation and conversion require a showing of intentional or wrongful conduct and Lyndon does not allege that Jupiter intentionally converted or misappropriated funds. (Doc. No. 68 at 15). Lyndon further argues that none of its claims against Jupiter are related to "commingling" of funds. (*Id*.).

Black's Law Dictionary defines "comingling" as "a mixing together; esp., a fiduciary's mixing of personal funds with those of a beneficiary or client." Black's Law Dictionary (10th ed. 2014). Because Lloyd's does not explain how the alleged damages involve "commingling of funds," the Court finds this exclusion would not preclude coverage.

With regard to conversion, Lyndon correctly states that conversion is an intentional tort. *See PNC Multifamily Cap. Inst. Fund XXVI Ltd. P'shp. v. Bluff City Comm. Dev. Corp.*, 387 S.W.3d 525, 553 (Tenn. Ct. App. 2012) ("Conversion is an intentional tort, and a party seeking to make out a *prima facie* case of conversion must prove: (1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights."); *Lankford v. City of Hendersonville*, No. M2016-02041-COA-R3-CV, 2018 WL 1559971, at *9 (Tenn. Ct. App. Mar. 29, 2018) (same). Lyndon has alleged Jupiter acted negligently. Accordingly, conversion does not apply.

"Misappropriation" is defined as "the application of another's property or money dishonestly to one's own use." Black's Law Dictionary (10th ed. 2014). Unlike conversion, misappropriation does not require intent. *See e.g.*, *Brown v. Davidson*, 1997 WL 749456, at *2

12

(Tenn. Ct. App. 1997) (use of client funds for other than their intended purposes constituted negligent misappropriation). In the context of attorney trust accounts, courts have acknowledged that there are "widely varying degrees of misappropriation of funds" ranging from knowing to simple negligence. *Bd. of Prof. Responsibility of the Sup. Ct. of Tenn. v. Barry*, 545 S.W.3d 408, 424 and n.21 (Tenn. 2018).

Lyndon argues that its allegation that "Jupiter negligently failed to remit $2,757,632.75, primarily for premiums reported to Lyndon as collected from policyholders" is not misappropriation because it does not contend Jupiter used these funds for its own use. (Doc. No. 68 at 16; *see also*, Doc. No. 32-1). Lyndon states that when it prepared its Position Statement, it had identified the loss, but could not "be sure of the explanation for the discrepancy." (*See* Doc. No. 32-1).

The misappropriation exclusion is more difficult. In considering the possible reasons Jupiter failed to remit the contested funds to Lyndon, it appears exceedingly unlikely that Jupiter did not apply the unremitted funds to its own use. Indeed, the Court acknowledges that such speculation is, at this juncture, purely theoretical given that the arbitration panel has issued a Final Award. However, considering only at the allegations in the demand letters and Position Statement, as is required when considering whether an insurance company has a duty to defend, it is hypothetically possible that the failure to remit payment was due to some reason other than a misappropriation of funds. "A duty to defend under a liability insurance contract is not contingent upon an insurance company's characterization of the claims contained in the complaint, but on the complaining party's characterization of those actions." *Northfield, Inc. Co. v. Isles of June Consulting Ltd.*, No. 99-cv-1186, 2001 WL 34076047, at *4 (M.D. Tenn. Sept. 26, 2001).

13

Accordingly, the exclusion for claims involving comingling, misappropriation, or conversion of funds does not definitively preclude coverage under the policy.

4. <u>Actual or alleged gaining of profit, remuneration, or monetary advantage to which Jupiter is not entitled</u>

Lloyd's next argues that all of the damages sought are excluded by the Policy's exclusions for loss "in connection with, arising out of, directly or indirectly related to or in any way involving" "any actual or alleged gaining of profit, remuneration or monetary advantage to which any insureds are not legally entitled." Similar to its argument regarding misappropriation, Lyndon argues that it has not alleged Jupiter financially benefitted. As discussed above, Lyndon's allegations do not foreclose the possibility that Jupiter failed to remit payment yet did not receive any financial benefit. Accordingly, this exclusion does not extinguish Lloyd's duty to defend.

## IV. CONCLUSION

For the reasons discussed above, and resolving any doubts as to coverage in favor of the insured, some of the allegations in arbitration demand might be covered by the policy. Accordingly, Lloyd's Motion for Judgment on the Pleadings as to its duty to defend will be **DENIED**. In addition, because Lloyd's duty to indemnify Jupiter with respect to the damages awarded in the underlying arbitration was not ripe at the time this motion was filed, the portion of the Motion for Judgment on the Pleading related to indemnification will be **DENIED**.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE